# STATE OF CONNECTICUT *v.* FRANK BELL
## (AC 17999)

O'Connell, C. J., and Sullivan and Daly, Js.

Argued June 8—officially released October 26, 1999

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *Mark S. Solak*, state's attorney, and *Debra Hughes*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Frank Bell, appeals from the judgments of conviction, rendered after a trial to the court, of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3), criminal trespass in the first degree in violation of General Statutes § 53a-107 and falsely reporting an incident in violation of General Statutes § 53a-180. The defendant claims that (1) he was improperly convicted on the harassment charge because his telephone calls were protected speech, (2) § 53a-183 (a) (3) is unconstitutionally vague as applied to him, (3) the evidence was insufficient to support his conviction for harassment, (4) the evidence was insufficient to support his conviction for criminal trespass and (5) the evidence was insufficient to support his conviction for falsely reporting an emergency. We affirm two of the judgments and reverse the judgment of conviction of criminal trespass in the first degree.

The following facts are necessary for a proper resolution of this appeal. The defendant and Evelyn Grajales, although unmarried, lived together and had two children. Grajales also had a child from a previous relationship, who lived with her and the defendant. At some point, the couple's relationship began to deteriorate. As a result, in April, 1996, Grajales enrolled the children in the family preservation program of Quinnebaug Valley Youth and Family Services (program).[1]

On April 2, 1996, the defendant began calling the program to express concern about it. Between April and August, 1996, the defendant made approximately forty-five telephone calls to various employees of the program. Thirty-six of the calls were voice mail messages that were recorded. In these messages, the defendant criticized employees and used language that made them feel threatened with bodily harm to themselves or to their families. Moreover, the defendant used language that the employees construed to mean that he could cause them to be fired, would embarrass them publicly or that they would be subject to divine justice. On September 11, 1996, the defendant was charged with harassment.

On November 4, 1996, the Superior Court entered an order requiring the defendant to vacate the apartment he shared with Grajales and enjoining him from entering or remaining in the building anytime after November 11, 1996.

On November 17, 1996, the defendant went to the apartment complex. Grajales saw him standing near the apartment abutting her apartment. Their children were in the yard of the apartment complex. When the defendant called to his children for a hug, Grajales ordered him to leave and told him that he was violating the

---

[1] Quinnebaug Valley Youth and Family Services provides various services to families and children.

court order. She then entered her apartment and called the police, at which point the defendant left. The defendant later was charged with criminal trespass.

On December 16, 1996, the defendant called Detective John H. Wackerman of the Willimantic police department and requested that the police send an officer to Grajales' residence because he believed she was not giving the children an antibiotic that was prescribed for them. In response, Wackerman told the defendant to contact the department of children and families (department) with his complaint, and the defendant responded by hanging up the telephone. Wackerman then called the department and spoke with social worker Jeffrey Cushner, who said that after seeing the children earlier that day, he did not feel that there was a medical emergency with them.

About one hour later, the defendant again called the police. Wackerman, hearing the call on his radio, drove to meet with the defendant. The defendant told him that Grajales' failure to give the children the antibiotic was a "medical emergency." Believing that the defendant was making his second false report of the day, Wackerman arrested him.

I

The defendant first claims that the trial court improperly convicted him of harassment in the second degree because his telephone calls to the program were protected speech. Specifically, the defendant claims he was exercising his federal first amendment right to speak on matters of public concern, since his calls related to the safety and welfare of children. Alternatively, the defendant claims that his speech is protected because it "did not fall into an unprotected category." We disagree.

Conceding that his claim is unpreserved, the defendant seeks review pursuant to *State* v. *Golding*, 213

Conn. 233, 239–40, 567 A.2d 823 (1989).[2] We will review his claim pursuant to *Golding* because the record is adequate for review and the claim is of constitutional magnitude. The defendant's claim, however, fails under the third prong of *Golding*.

General Statutes § 53a-183 (a) provides in relevant part that "[a] person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

"The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment. . . . Overbroad statutes, like vague ones, inhibit the exercise of constitutionally protected conduct. . . . A party has standing to raise an overbreadth claim, however, only if there [is] a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Snyder*, 49 Conn. App. 617, 623, 717 A.2d 240 (1998).

The appellate session of the Superior Court previously rejected a claim that § 53a-183 (a) (3) is facially overbroad. "As venerated a place as freedom of speech may hold in the constitutional scheme, reasonable regu-

---

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239-40.

lation of the place and manner of its exercise has been upheld consistently. . . . Where the means of communication involves an intrusion upon privacy, the right of free expression must be balanced against the right to be let alone. . . . A telephone is not a public forum where, in vindication of our liberties, unreceptive listeners need to be exposed to the onslaught of repugnant ideas. . . . The overbreadth principle is not violated by the unrestricted scope of the messages which the statute may ban because it is the manner and means employed to communicate them which is the subject of the prohibition rather than their content. The statute is not flawed because a recital on the telephone of the most sublime prayer with the intention and effect of harassing the listener would fall within its ban as readily as the most scurrilous epithet. The prohibition is against purposeful harassment by means of a device readily susceptible to abuse as a constant trespasser upon our privacy. That words may be the instrument of annoyance does not insulate such wrongful conduct from criminal liability." (Citations omitted.) *State* v. *Anonymous (1978-4)*, 34 Conn. Sup. 689, 696, 389 A.2d 1270 (1978).

In a decision denying the petition filed by the defendant in *Anonymous (1978-4)* for a writ of habeas corpus, the United States Court of Appeals for the Second Circuit also determined that § 53-183 (a) (3) is not unconstitutionally overbroad. *Gormley* v. *Director, Dept. of Probation*, 632 F.2d 938, 942 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980). "Clearly the Connecticut statute regulates *conduct*, not mere speech. What is proscribed is the making of a telephone call, with the requisite intent and in the specified manner." (Emphasis in original.) Id., 941–42. "The asserted overbreadth of the Connecticut statute is circumscribed by the elements of the offense it proscribes. To run afoul of the statute, a telephone call must be made not merely to communicate, but with

intent to harass, annoy or alarm and in a manner likely to cause annoyance or alarm. Whether speech actually occurs is irrelevant, since the statute proscribes conduct, whether or not a conversation actually ensues." (Internal quotation marks omitted.) Id., 942.

We conclude that the defendant's telephone calls were not protected speech under the first amendment. Although the defendant claims that the statute prevents him from speaking out on matters of public concern, it merely prohibits purposeful harassment by use of the telephone and does not involve first amendment concerns. The statute proscribes conduct, not the content of the telephone calls. The risk that the statute will have a chilling effect on the exercise of free speech is therefore remote compared with the prevalent misuse of telephones to harass others and to invade their privacy.

II

The defendant's second claim is that § 53a-183 (a) (3) is unconstitutionally vague as applied to him because "he reasonably acted in reliance on the reasonable belief that his conduct was lawful" in expressing his complaints to the program. We disagree.

"The doctrine [of vagueness] requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement. *State* v. *Indrisano*, 228 Conn. 795, 802, 640 A.2d 986 (1994). Our Supreme Court based its analysis in *Indrisano* on the three standards set out by the United States Supreme Court for evaluating vagueness. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence

must necessarily guess at its meaning and differ as to its application violates due process of law. . . .

"Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. . . . Therefore, a legislature [must] establish minimal guidelines to govern law enforcement. . . . Third, but related, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms." (Internal quotation marks omitted.) *State* v. *Cummings*, 46 Conn. App. 661, 667–68, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997).

Because the defendant did not preserve this claim at trial, he seeks review pursuant to *Golding*. The state argues that review is impermissible because the defendant's claim fails under the second prong of *Golding*. We disagree. To enable us to review a claim that a statute is vague as applied, the record must reflect that the defendant was convicted under the statute in question and the conduct that formed the basis of the conviction. *State* v. *Indrisano*, supra, 228 Conn. 800. Here, the record is sufficient for review. We therefore advance our analysis to the third prong of *Golding*, namely whether the defendant was deprived of his constitutional right to a fair trial because § 53a-183 (a) (3) is unconstitutionally vague as applied to his conduct.

We conclude that the statute is not unconstitutionally vague as applied to the defendant's conduct. The defendant implausibly argues that he acted in reliance on the belief that his conduct was lawful and that a person of ordinary intelligence would not have a reasonable

opportunity to know that he was engaging in prohibited conduct because he was merely expressing complaints and because the police did not tell him that he was engaging in unlawful conduct. We conclude that § 53a-183 (a) (3) is not unconstitutionally vague as applied to the defendant's conduct.

### III

The defendant's third claim is that there was insufficient evidence of intent to support his conviction for harassment in the second degree.[3] We disagree.

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Citations omitted.) *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995).

"It is well established that the question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the [trier of fact] to decide." (Internal quotation marks omitted.) *State* v. *Watson*, 50 Conn. App. 591, 605, 718 A.2d 497,

---

[3] The defendant failed to raise his insufficiency claim at trial. We will, however, review his claim because the record is adequate for review and because the claim is of constitutional magnitude. See *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993).

cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999). "[I]n viewing evidence which could yield contrary inferences, the [trier of fact] is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 132, 646 A.2d 169 (1994). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [fact finder's] verdict of guilty." Id., 134.

The defendant claims that the evidence was sufficient to prove only that his intent in calling the program was to express a complaint and not to harass. After construing the evidence in the light most favorable to sustaining the verdict, we conclude that the trial court reasonably could have found that the evidence was sufficient to find that the defendant intended to harass through his telephone calls. First, the defendant made approximately forty-five telephone calls over a five month period. Indeed, the defendant often called the same person more than once on a particular day and often called different people on the same day. Second, the court reasonably could have concluded that the content of the defendant's calls was intended to harass. "Evidence of the language used in an alleged violation of the harassment statute is relevant to show the intent of the accused in making the telephone call as well as the likelihood of its causing annoyance or alarm." *State* v. *Lewtan*, 5 Conn. App. 79, 83, 497 A.2d 60 (1985). The defendant used words in his telephone calls that reasonably could have been construed as threatening, which is relevant to show intent. See *State* v. *Veal*, 201 Conn. 368, 375, 517 A.2d 615 (1986). Accordingly, we

conclude that the court reasonably could have concluded that the evidence was sufficient to prove that the defendant intended to harass or annoy the employees of the program.

## IV

The defendant's fourth claim is that the evidence was insufficient to support his conviction for criminal trespass because there was no evidence that he entered Grajales' apartment building in violation of the court's restraining order. We agree.

General Statutes § 53a-107 (a) provides in relevant part that "[a] person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, he enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to him by the owner of the premises or other authorized person . . . ."[4]

The state failed to offer any evidence that the defendant entered Grajales' apartment building in violation of the court's order. The testimony reveals only that the defendant was standing outside the building where he called to his children to ask for a hug. Once Grajales went inside to call the police, the defendant left the area. The court's order prevented the defendant only from entering the building, not from being on the property. There is nothing in the record indicating that the defendant entered the building in contravention of the order.

The state does not contend that there was sufficient evidence indicating that the defendant entered the

[4] The judgment is unclear as to whether the defendant was convicted pursuant to § 53a-107 (a) (1) or (2). Subdivision (2) of § 53a-107 (a), however, is inapplicable to the facts of this case because that subdivision does not apply to restraining orders issued pursuant to General Statutes § 46b-121, which the court had issued against the defendant.

building. Instead, the state contends that because there was sufficient evidence indicating that the defendant was on the property, the defendant properly could have been convicted under § 53a-107 (a) (1). The court's order, however, only prevents the defendant from entering the building, not from being on the property on which the building was located. The defendant, therefore, did not violate the court's order and could not have violated § 53a-107 (a) (1).

The state further contends that once Grajales ordered the defendant to leave the premises, he was not entitled to remain on the grounds of the building. We disagree, however, because a tenant cannot be considered an "owner" with respect to an order to leave the premises for purposes of § 53a-107 unless the record reveals that the owner or an agent of the landlord conferred authority on the tenant, thereby permitting the tenant to prevent someone from being on the premises. See *State* v. *LoSacco*, 12 Conn. App. 172, 177–78, 529 A.2d 1348 (1987). Nothing in the record suggests that Grajales had the authority to prevent the defendant from being on the property outside of the building. Therefore, Grajales, as a tenant in a multi-unit apartment building, had no authority to order the defendant not to be on the property outside of the building. Accordingly, we find that the evidence was insufficient to convict the defendant under § 53a-107.

V

The defendant's final claim is that the evidence was insufficient to support his conviction for falsely reporting an emergency.[5] We disagree.

---

[5] The judgment is unclear as to which subsection of General Statutes § 53a-180 the defendant was convicted under. Further, the information is unclear as to which subsection the defendant was charged with having violated. The state, however, argued at trial that the defendant falsely reported an incident to a law enforcement officer, pursuant to § 53a-180 (a) (3), rather than to an official or quasi-official agency or organization having the function of dealing with emergencies, pursuant to § 53a-180 (a) (2).

General Statutes § 53a-180 (a) provides in relevant part: "A person is guilty of falsely reporting an incident when, knowing the information reported, conveyed or circulated to be false or baseless, he . . . (3) gratuitously reports to a law enforcement officer or agency (A) the alleged occurrence of an offense or incident which did not in fact occur, (B) an allegedly impending occurrence of an offense or incident which in fact is not about to occur, or (C) false information relating to an actual offense or incident or to the alleged implication of some person therein."

We conclude that the trial court reasonably could have found that the defendant knew that his report to Wackerman was baseless. The evidence indicated that the defendant called Wackerman to complain that Grajales did not provide his children with an antibiotic and therefore they were in immediate danger. After Wackerman told the defendant to contact the department with his concerns, the defendant ignored this instruction and called 911, again claiming that there was an emergency. Nothing in the record reveals that an actual emergency occurred or was about to occur. Accordingly, we conclude that the court reasonably could have found that the evidence was sufficient to convict the defendant of falsely reporting an incident.

The judgment of conviction of criminal trespass in the first degree is reversed and the case is remanded with direction to render judgment of not guilty of that crime. The judgments of conviction of harassment in the second degree and falsely reporting an incident are affirmed.

In this opinion the other judges concurred.

---

Moreover, a review of the transcripts reveals that the state, during closing argument, argued its case under § 53a-180 (a) (3). Accordingly, we will analyze the defendant's claim under § 53a-180 (a) (3).