STATE OF CONNECTICUT *v.* DIANA L. MOULTON
(AC 29617)

Beach, Robinson and McDonald, Js.

Argued April 15, 2009—officially released April 13, 2010

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Michelle Bredefeld*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Diana L. Moulton, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (3) and harassment in the second degree in violation of General Statutes § 53a-183 (a) (3). On appeal, the defendant claims that her conviction for harassment should be reversed because it was based on speech that did not constitute a true threat or intolerably invade a substantial privacy interest. In addition, she claims that her conviction of both crimes should be reversed because (1) the court improperly instructed the jury and (2) the evidence was insufficient to support her conviction. We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. On February 4, 2006, the defendant placed a telephone call to the Salem Turnpike post office in Norwich. The defendant, a letter carrier, working out of the Salem Turnpike branch, was on leave from her job at that time. Deborah Magnant, the branch's supervisor of customer service, answered the telephone. Magnant recognized the caller's voice, and the caller identified herself as the defendant. Magnant testified that she had spoken with the caller over the telephone at least two other times over the previous four to five weeks and recognized the voice to be that of the defendant but had never met her. The defendant asked to speak to David Ravenelle, the postmaster, but Magnant told her that he was not working that day. The defendant then asked

to whom she was speaking, and Magnant identified herself. The defendant said: "Oh, I know you. I have talked to you before."

At that point, the defendant started talking about when she would be returning to work, "[a]nd then she said something about the shootings." Specifically, she said: "[T]he shootings, you know, the shootings in California. I know why she did that. They are doing the same thing to me that they did to her, and I could do that, too." The defendant was referring to an incident that took place approximately five days prior when a postal employee in California shot and killed several postal workers inside the postal facility where she worked.

Magnant testified that the defendant's tone of voice was angry and agitated and that the statement about the shootings caused her alarm, so she began taking notes of the conversation. Magnant stated that the defendant continued to talk, "just sharing whatever was on her mind." She discussed her post-traumatic stress disorder and when she would be returning to work. She also asked for her union steward. The defendant seemed to be upset that she was out of work and talked about how her direct supervisor and the prior postmaster harassed and bullied her and how her supervisor was incompetent. The defendant also mentioned other postal employees by name. The call ended after the defendant told Magnant that she would be calling back on Monday, when she could speak to Ravenelle, and Magnant assured her that she would make sure that Ravenelle knew she would be calling.

Magnant notified Ravenelle about the telephone call as soon as he arrived at work Monday morning, at approximately 6 a.m. Ravenelle contacted his supervisors and the postal inspection service, which acts as an internal police force for the postal service. Magnant

spoke with postal inspectors that morning, who asked for her notes of the conversation and instructed her to call the local police. She contacted the police and filed an official report at that point.

The defendant was arrested and charged with breach of the peace in the second degree in violation of § 53a-181 (a) (3)[1] and harassment in the second degree in violation of § 53a-183 (a) (3).[2] A trial was held on December 5, 2007, and the jury returned a verdict of guilty on both counts on that date. On January 29, 2008, the defendant was sentenced to six months incarceration, execution suspended, and two years probation on the breach of the peace charge; ninety days incarceration, execution suspended, and one year probation on the harassment charge, to be served consecutively. This appeal followed.

I

The defendant first claims that her conviction for harassment must be reversed because the application of the harassment statute, § 53a-183 (a) (3), to her telephone conversation implicated her first amendment rights.[3] She asserts that her conviction was an infringement of her freedom of speech because her words were constitutionally protected. According to the defendant,

[1] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (3) threatens to commit any crime against another person or such other person's property . . . ."

[2] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

[3] The first amendment to the United States constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I.

the jury instructions allowed the jury to find her guilty based on speech that was not given first amendment scrutiny. We agree. We conclude that the statute on its face does not infringe on the defendant's freedom of speech. In the present case, however, the state concedes that it prosecuted the defendant for her speech alone and not for her conduct in making the telephone call. This is a misapplication of the statute, § 53-183 (a) (3), and we find nothing in the jury instructions that corrects this improper construction. Because the defendant was punished for the verbal content of her telephone call, the statute, § 53-183 (a) (3), was unconstitutional as applied.

The defendant's claim is unpreserved, and she seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] The record is adequate for review, and the claim, asserting a violation of the defendant's right to freedom of speech, is of constitutional magnitude.

"If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt. . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party. . . . In

---

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Fleming*, 111 Conn. App. 337, 353–54, 958 A.2d 1271 (2008), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009).

The harassment statute was enacted for the purpose of thwarting the growing practice of using the telephone as a device to intrude upon others' privacy in a tormenting manner. See *State* v. *Anonymous (1978-4)*, 34 Conn. Sup. 689, 696, 389 A.2d 1270 (1978); *Gormley* v. *Director, Connecticut State Dept. of Probation*, 632 F.2d 938, 940, 941–42 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980). The United States Court of Appeals for the Second Circuit has declared that "by its express terms the statute may be violated where no conversation at all occurs." *Gormley* v. *Director, Connecticut State Dept. of Probation*, supra, 942. "What is proscribed is the making of a telephone call, with the requisite intent and in the specified manner." Id., 941–42.

In *State* v. *Bell*, 55 Conn. App. 475, 481, 739 A.2d 714, cert. denied, 252 Conn. 908, 743 A.2d 619 (1999), this court unequivocally distinguished § 53a-183 (a) (3) as a statute that regulates conduct, not speech. This court upheld the conviction of the defendant in *Bell* for harassment in the second degree where the defendant had called employees of a social services program approximately forty-five times. Id., 476–77. After examining the language of § 53a-183 (a) (3), this court found that it prohibits the conduct of using the telephone as a device to "harass, annoy or alarm another person"

but that the statute does not facially proscribe speech communicated via telephone. Id., 480–81. Any speech that may accompany such telephone calls is considered to be circumstantial evidence of the defendant's intent. *State* v. *Lewtan*, 5 Conn. App. 79, 83, 497 A.2d 60 (1985). For example, a telephone call made at what would otherwise be an innocuous time, to someone the caller might normally call, may be harassing if what the caller said during the telephone call evinced his intention to harass through the actual ringing of the telephone.

Therefore, it is the physical act of placing the call and causing a ringing at the receiving end, that constitutes the actus reus of the crime. This act is what the statute punishes under § 53-183 (a) (3) and not the language that may ensue in the subsequent telephone conversation. For those reasons, we agree with the court in *Bell* that § 53-183 (a) (3) is not unconstitutionally overbroad on its face. In the present case, however, the state prosecuted the defendant on the basis of her speech, not her conduct in making the telephone call, and, therefore, her conviction was based on an impermissible construction of § 53a-183 (a) (3), which implicated her first amendment rights. Accordingly, we conclude that the statute was unconstitutional as applied to the defendant.

During a telephone call to the post office, the defendant made the comment that she understood how a postal worker could become enraged and that she could "do that, too," in reference to recent killings by a postal worker in California. The state admits that it was this comment that was the basis for the charge of harassment. The state concedes, therefore, that the defendant was convicted on the basis of the verbal content of her telephone call and not the physical act of making the telephone call.

The court instructed the jury that the defendant could be convicted on the harassment count only if the state

established beyond a reasonable doubt that the defendant "intended to annoy, alarm another person by *making a telephone call.*" (Emphasis added.) This instruction, in conjunction with the state's theory of the case, effectively signified to the jury that it was permitted to construe the words the defendant used during the telephone call, as the "making" of the telephone call. This is not the correct interpretation of the statute. Rather, the making of the telephone call refers only to the ringing of the telephone and the frequency with which the defendant makes the call. This instruction, therefore, permitted the jury to find the defendant guilty of harassment on the basis of speech that was not given first amendment scrutiny, rather than on the basis of her conduct in making the call.

The state argues that it was "uncontested and supported by overwhelming evidence"; *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); that the speech on which the defendant's conviction was based was a true threat,[5] and that, therefore, the omission in the jury instructions was harmless beyond a reasonable doubt because the speech was obviously not protected by the first amendment. It was not the lack of "true threat" instructions to the jury, however, that caused the error. Rather, it was the construction of the statute by the state as one that punishes speech and the failure of the court to clarify the correct

[5] "The [f]irst [a]mendment permits restrictions upon the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. . . . Thus . . . a [s]tate may punish those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Internal quotation marks omitted.) *State* v. *DeLoreto*, 265 Conn. 145, 154, 827 A.2d 671 (2003). These words have been categorized in American jurisprudence as "true threats." See id. Our jurisprudence instructs us, however, that there is no need to differentiate between protected speech and true threats under § 53a-183 (a) (3), because the statute was created to punish conduct only.

interpretation of § 53a-183 (a) (3) in the jury instructions. Without the proper clarification, the jury improperly was permitted to base its guilty verdict on the defendant's speech without giving it first amendment scrutiny. The jury should have been instructed to examine only whether the act of calling and causing the ringing of the telephone was harassing, and to look to the speech only for the intent in physically making the telephone call.

After considering the actual act of calling, we find that the evidence does not support the jury's finding that the defendant intended her telephone call to the post office to be harassing. The defendant called the post office during business hours; she did not seek to contact Magnant personally. Further, the call was to the defendant's place of employment, rather than to Magnant's personal residence. The defendant's call, up to that point, was dissimilar to those normally serving as a foundation for a harassment charge.[6] During the telephone conversation, in addition to the comment about the shootings in California, the defendant complained to Magnant about returning to work as a letter carrier and being bullied by postal supervisors. The

---

[6] The use of the telephone to make repeated or unwelcome calls to a person's residence or personal phone, usually at night or in the early hours of the morning, is commonly the basis for conviction under § 53a-183 (a) (3). See, e.g., *State* v. *Therrien*, 117 Conn. App. 256, 978 A.2d 556 (initial conviction for harassment based on defendant's threatening calls to victim's personal cellular telephone), cert. denied, 294 Conn. 913, 983 A.2d 275 (2009); *State* v. *Lemay*, 105 Conn. App. 486, 938 A.2d 611 (affirming defendant's conviction for harassment where he repeatedly, anonymously called victim and made banging noises), cert. denied, 286 Conn. 915, 945 A.2d 978 (2008); *State* v. *Bell*, supra, 55 Conn. App. 475; *State* v. *Marsala*, 43 Conn. App. 527, 684 A.2d 1199 (1996) (affirming defendant's conviction for harassment based on more than twenty-five telephone calls defendant made to victim during early morning hours), cert. denied, 239 Conn. 957, 688 A.2d 329 (1997); *State* v. *Marsala*, 1 Conn. App. 647, 474 A.2d 488 (1984) (affirming defendant's conviction for harassment where he made threatening calls to victim at her home, at night, and broke victim's window).

evidence does not fall so heavily in support of the argument that the telephone call itself was intended to be harassing that the improper jury instructions were harmless. We conclude that the court's improper instruction as to the statute with which the defendant was charged was harmful and that it is reasonably possible that the jury was misled. Accordingly, the defendant's conviction of harassment in the second degree cannot stand.

## II

The defendant next claims that the court improperly instructed the jury. Specifically, she claims that the court's instructions on both charges were incomplete and did not instruct the jury that in order to find her guilty, it had to find that the state had proven that her statements constituted a constitutionally punishable true threat. She also argues, in regard to the breach of the peace charge, that the instructions were defective because they included definitions of the terms annoy, alarm and inconvenience that were not in accordance with the judicial gloss previously given by this court and our Supreme Court to narrowly tailor the application of both the breach of the peace and harassment statutes. We agree with respect to the breach of the peace charge but disagree with respect to the harassment charge.

The defendant did not submit a request to charge or take an exception to the charge given and again seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. It "is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged." (Internal quotation marks omitted.) *State* v. *Crudup*, 81 Conn. App. 248, 256, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004). We will review this claim under the *Golding* doctrine because the record is adequate for review, and the claim that the jury was not instructed on an essential element of

an offense is of constitutional magnitude. Furthermore, we agree that a constitutional violation clearly exists and deprived the defendant of a fair trial.

As we explained previously, "[w]here . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omitted.) *State* v. *Akande*, 111 Conn. App. 596, 606, 960 A.2d 1045 (2008), cert. granted on other grounds, 290 Conn. 918, 966 A.2d 237 (2009). We examine the charges separately.

A

We begin our analysis by setting forth the court's jury instructions with respect to the charge of breach of the peace. The court instructed the jury in relevant part: "The defendant is charged with breach of [the] peace in violation of § 53a-181 . . . (a) (3) of the Penal Code, which provides as follows: A person is guilty of breach of [the] peace, when with intent to cause inconvenience, annoyance or alarm or recklessly creat[ing] a risk thereof, she threatens to commit any crime against another person or his property.

"For you to find the defendant guilty of this charge, the state must prove the defendant acted with the intent to cause inconvenience, annoyance, or alarm. Intent relates to a condition of the mind of the person who commits the act and his purpose in—or her purpose in doing so. As defined by our statute, a person acts intentionally, quote, with respect to a result or conduct when their conscious objective is to cause such result or to engage in such conduct. What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that they looked into another's mind and saw therein a certain purpose or intention or certain knowledge to do harm.

"The only way in which a jury can ordinarily determine what a person's purpose, intention or knowledge was at any given time, aside from that person's own statements or testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and from that infer what their purpose, intention or knowledge was. The predominant intent must be to cause what a reasonable person operating under contemporary circumstances would consider a disturbance or to a—or an impediment of lawful society, a deep feeling of vexation or provocation or a feeling of anxiety prompted by the threat—threatened danger or harm recklessly created a risk of causing inconvenience, annoyance and alarm.

"A person acts recklessly with respect to a result or to circumstances described by statute defining an offense when the defendant is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or such circumstances exist. . . . The words inconvenience, annoyance, alarm refer to what a reasonable person operating under the contemporary community [standard] would consider to be a disturbance or to the impediment or of a lawful activity, a deep feeling of vexation or feeling of anxiety prompted by a—threatened by a danger.

"That might have been repeated, but I was rushing today. The next element the state must prove beyond a reasonable doubt is that the defendant threatened to commit a crime against another person or their property. The state claims that the defendant threatened to commit the same crimes as in California against the Norwich post office. Threatened means declaring an intention or determination to injure another person or their property by the commission or of a threatened crime. A threatened—a threat imparts the expectation of bodily harm to one's person or harm to one's property

by the crime threatened, thereby inducing fear or apprehension."

This court and our Supreme Court have recognized that judicial gloss is necessary in the context of a jury charge on the crime of breach of the peace in order to elucidate the concept of a true threat. "True threats encompass those statements [when] the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. . . . *Virginia* v. *Black*, [538 U.S. 343, 358–60, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003)]." (Internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 247–48, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). "In the context of a threat of physical violence, [w]hether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." (Internal quotation marks omitted.) Id., 249. "As a general matter, moreover, whether such expressive conduct represents a true threat is to be decided by the jury." Id., 252.

In *State* v. *DeLoreto*, 265 Conn. 145, 166, 827 A.2d 671 (2003), the court explained that in the absence of judicial gloss interpreting the breach of the peace statute, § 53a-181, as applying only to true threats, there was a danger that the provision could be construed as overbroad, and, therefore, "such a gloss was necessary to save the statute from constitutional infirmity." *State* v. *Cook*, supra, 287 Conn. 249. Likewise, this court, in

*State* v. *Skidd*, 104 Conn. App. 46, 932 A.2d 416 (2007), noted that *DeLoreto* "acknowledged that in order for a threat to be prohibited by statute in Connecticut, that threat must rise to the level of a true threat . . . ." (Internal quotation marks omitted.) Id., 55.

Under the court's decision in *DeLoreto*, the defendant was entitled to an instruction that she could be convicted of the charge of breach of the peace only if her statements constituted a true threat, that is, a threat that would be viewed by a reasonable person as one that would be understood by the person against whom it was directed as a serious expression of an intent to harm or assault, and not as mere puffery, bluster, jest or hyperbole. See *State* v. *Cook*, supra, 287 Conn. 250. "Because the circumstances surrounding the alleged threat are critical to the determination of whether the threat is a true threat, the trial court also should have instructed the jury to consider the particular factual context in which the allegedly threatening conduct occurred . . . ." Id. Considering the instructions as a whole, we conclude that there is a reasonable possibility that the jury was misled. Although the state contends that the omissions from the instructions were harmless, the court's instruction did not include the judicial gloss on the charges that is required by *DeLoreto*, and, as a result, the jury could have found the defendant guilty on the basis of conduct that did not rise to the level of a true threat. Had the jury been instructed properly, it is reasonably possible that it would have found that a reasonable person in the defendant's position would not have foreseen that her statements would be interpreted as a serious expression of an intent to harm but, rather, as mere banter, jest or exaggeration. Accordingly, the defendant's conviction on the charge of breach of the peace cannot stand.

B

The defendant also claims that the court improperly instructed the jury as to the crime of harassment in the

second degree under § 53a-183 (a) (3). She specifically claims that the true threat judicial gloss described previously was constitutionally required to accompany the jury instructions because she was charged on the basis of the content of her speech, not on her act of making the telephone call, and the omission created a reasonable possibility that the jury was misled. We disagree. Although we agreed in part I of this opinion that § 53a-183 (a) (3) is unconstitutional as applied to the defendant, our reasoning is founded on the fact that the court improperly allowed the defendant's conviction to be based on her speech, rather than on her conduct. Therefore, we do not agree that the statute required the judicial gloss describing true threats because the speech should not have been the foundation of the conviction.[7]

## III

We next address the appropriate remedy to deal with the reversal of the defendant's breach of the peace and harassment conviction. We must determine whether the defendant is entitled to a new trial on the charges of breach of the peace and harassment or whether a judgment of acquittal should be entered. The defendant claims that the evidence was insufficient to support her conviction of both charges, and, therefore, a judgment of acquittal should be entered on both charges. We agree with respect to the harassment charge only and

---

[7] Unlike the crime of breach of the peace under § 53a-181 (a), the crime of telephone harassment under § 53a-183 is not a threatening language crime. A violation of § 53a-183 (a) (3) is predicated on conduct. In part I of this opinion, we concluded that the court allowed the state to impermissibly apply the statute, § 53a-183 (a) (3), in a way that made its application unconstitutional because it punished speech. Therefore, rather than applying a judicial gloss to the statute, the court should clarify in its instructions that in regard to a violation of § 53a-183 (a) (3), the jury is only to determine whether the actual act of making the telephone call and causing it to ring was harassing, and to consider the defendant's subsequent speech only to infer her intent in making the call. Accordingly, the jury instructions on this charge were improper, but a judicial gloss is not the correct remedy.

conclude that the defendant is, instead, entitled to a new trial on the breach of the peace charge.

"It is well established that instructional impropriety constitutes trial error for which the appropriate remedy is a new trial, rather than a judgment of acquittal. As the United States Supreme Court observed in *Burks* v. *United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." (Internal quotation marks omitted.) *State* v. *DeJesus*, 288 Conn. 418, 434–35, 953 A.2d 45 (2008).

Where the defendant's conviction is overturned because the evidence at trial was insufficient to support it, however, "[t]he same cannot be said . . . [and] in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." (Internal quotation marks omitted.) *State* v. *Sanseverino*, 287 Conn. 608, 652, 949 A.2d 1156 (2008) (*Zarella, J.*, dissenting), overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008) (en banc), and superseded in part by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2008) (en banc), quoting *Burks* v. *United States*, supra, 437 U.S. 16. Therefore, because "[a] claim of insufficient evidence implicates the constitutional right not to be

convicted on inadequate proof . . . a defendant convicted on insufficient evidence cannot be retried without violating the double jeopardy clause." (Citation omitted; internal quotation marks omitted.) *State* v. *Rose*, 112 Conn. App. 324, 328, 963 A.2d 68, cert. granted on other grounds, 290 Conn. 920, 966 A.2d 238 (2009).

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Dickman*, 119 Conn. App. 581, 587–88, 989 A.2d 613, cert. denied, 295 Conn. 923, 991 A.2d 569 (2010). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Ovechka*, 99 Conn. App. 679, 683, 915 A.2d 926 (2007), rev'd on other grounds, 292 Conn. 533, 975 A.2d 1 (2009) (en banc), after remand, 118 Conn. App. 733, 984 A.2d 796, cert. denied, 295 Conn. 905, 989 A.2d 120 (2010). "We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Internal quotation marks omitted.) *State* v. *Salz*, 226 Conn. 20, 30, 627 A.2d 862 (1993).

We note, however, that "[t]his [c]ourt's duty is not limited to the elaboration of constitutional principles;

we must also in proper cases review the evidence to make certain that those principles have been constitutionally applied. This is such a case, particularly since the question is one of alleged trespass across the line between speech unconditionally guaranteed and speech which may legitimately be regulated. . . . In cases [in which] that line must be drawn, the rule is that we examine for ourselves the statements in issue and the circumstances under which they were made to see . . . whether they are of a character which the principles of the [f]irst [a]mendment . . . protect. . . . We must [independently examine] the whole record . . . so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression." (Internal quotation marks omitted.) *State* v. *Cook*, supra, 287 Conn. 254–55, quoting *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 285, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). "We recently have reiterated this de novo scope of review in free speech claims in *DiMartino* v. *Richens*, 263 Conn. 639, 661–62, 822 A.2d 205 (2003) . . . ." *State* v. *DeLoreto*, supra, 265 Conn. 153.

## A

The defendant contends that the evidence was insufficient to convict her of the crime of breach of the peace in the second degree because the state failed to prove the necessary mens rea. To prove the defendant guilty of the crime of breach of the peace in violation of § 53a-181 (a), the state was required to prove beyond a reasonable doubt that she, "with the intent to cause inconvenience, annoyance or alarm, or recklessly creat-[ing] a risk thereof . . . (3) threaten[ed] to commit any crime against another person . . . ." The defendant asserts that (1) the state could not prove that she had such an intent because her words were not an actual threat but merely ambiguous speech, as illustrated by Magnant's reaction and the circumstances surrounding

the telephone call, and (2) she did not threaten to commit any crime.

"[A] defendant's state of mind can usually be proven only by circumstantial evidence . . . [and] may be, and usually is, inferred from conduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Salz*, supra, 226 Conn. 32–33. "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Bell*, supra, 55 Conn. App. 483.

In its prosecution of the case, the state focused on the defendant's use of the words, "I could do that, too," referring to the California shootings. The state maintains that her use of these words was a comment made by a disgruntled and angry employee who harbored an intent to cause a feeling of anxiety prompted by threatening harm that "equat[ed] herself with a murderous postal employee in California . . . ." The defendant argues that she was simply angry about her treatment at work and that a reasonable person could not have foreseen that her statements would be interpreted by Magnant as a serious expression of an intent to harm.

We conclude that the evidence was sufficient to support a finding that a reasonable person in the defendant's position would have foreseen that the defendant's statements and actions would be interpreted by Magnant as a serious expression of an intent to harm. The defendant not only made reference to the incident in California where a disgruntled postal employee murdered several coworkers, but also

expressed, in no uncertain terms, that she, too, could inflict such harm herself.

Neither party disputes that the defendant told Magnant, a fellow postal employee, "I could do that, too." Magnant testified that the defendant's mention of the shootings prompted her to begin taking notes on the conversation "because that was kind of a strange thing to say," and "it alarmed [her] enough that [she] felt that [she] needed to document what was being said . . . ." Magnant asked her to repeat what she had just said, and the defendant replied: "[Y]es, the shootings in California. . . . I know why [the postal employee] did that. They are doing the same thing to me that they did to her, and I could do that, too." Although the defendant contends that her words were ambiguous, there cannot be any dispute that in the course of venting her frustration about her employment with the United States Postal Service, she told Magnant that she understood how that employee felt and that she was equally capable of expressing her frustration by shooting, and possibly killing, her coworkers.

Magnant explicitly testified that the defendant's statement caused her alarm and that her tone of voice was both angry and agitated. The defendant had never worked with Magnant, although Magnant had spoken with her on the telephone often enough to recognize her voice, so Magnant did not know her well enough to be able to discern, in those few minutes, whether the defendant was joking or potentially was capable of carrying out this threat. Postal employees are understandably sensitive at being the target of such threats, serious or otherwise. A reasonable person in the defendant's position should have foreseen that any potential threat against a fellow postal employee, particularly one who was not well acquainted with her, would have caused her to feel anxious. The fact that the defendant chose to air her grievances to, in effect, an anonymous

postal employee instead of the persons about whom her complaints were directed is further proof of the depth of the potential instability of the defendant and further reason for there to be cause for alarm.

We do not agree with the defendant's contention that if Magnant had concerns about the defendant, she immediately would have contacted the police. Such a requirement would set a higher bar than the statute mandates. We conclude that the jury reasonably could have concluded that the defendant had the predominant intent to cause a feeling of anxiety prompted by threatened danger or harm. Because we conclude that the evidence was sufficient to sustain her conviction on the breach of the peace charge, if a jury so finds, the defendant is entitled to a new trial on this charge based on the improper jury instructions.

B

The defendant also contends that the evidence was insufficient to convict her of the crime of harassment in the second degree under § 53a-183 (a). She contends, as previously stated, that the state failed to establish that she had the necessary intent. We agree.

To prove the crime of harassment in the second degree, the state must show that the defendant, with the intent to harass, annoy or alarm another person, made a telephone call in a manner likely to cause annoyance or alarm. "Alarm is defined as to strike with fear: fill with anxiety as to threatening danger or harm . . . ." (Internal quotation marks omitted.) *State* v. *Cummings*, 46 Conn. App. 661, 673, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997). There is no conceptual distinction among acts intended "to harass," "to annoy" and "to alarm." *State* v. *Marsala*, 43 Conn. App. 527, 540, 684 A.2d 1199 (1996), cert. denied, 239 Conn. 957, 688 A.2d 329 (1997).

"Evidence of the language used in an alleged violation of the harassment statute is relevant to show the intent of the accused in making the telephone call as well as the likelihood of its causing annoyance or alarm." *State v. Lewtan,* supra, 5 Conn. App. 83. "[I]n a prosecution seeking a conviction under § 53a-183, the fact finder may consider the language used in the communication in determining whether the state has proven the elements of the offense, namely, that the defendant intended to harass, annoy or alarm, and that he did so in a manner likely to cause annoyance or alarm." *State v. Murphy,* 254 Conn. 561, 569, 757 A.2d 1125 (2000).

If the statute, § 53a-183 (a), were properly construed,[8] the jury did not have before it sufficient evidence to conclude that the defendant's telephone call, alone or in conjunction with the defendant's words, conveyed a serious intention to harass the victim. We distinguished the defendant's telephone call from those that normally support a conviction for harassment under § 53a-183 (a) in that it was a singular telephone call made generally to a place of business, during business hours.[9] This alone does not carve the telephone call out of the activity proscribed by § 53a-183 (a). The jury could have used the defendant's speech to infer that she intended for the single telephone call to be harassing. Neither the defendant's complaints nor her reference to the California shootings, however, show that she thought that the ringing of her telephone call would disrupt the person responsible for answering telephones at the post office. She did not admit that she knew something that would make this otherwise innocuous call harassing; for example, that she knew that she was calling a private line at the post office and that the person on the other end would be significantly disrupted by the ringing. Nothing the defendant said shed light on how she thought the

---

[8] See part I of this opinion.

[9] See footnote 6 of this opinion.

ringing of her telephone call would affect the recipient. This conclusion does not mean that we consider the defendant's words referencing the shooting in California to be insignificant but, rather, that these words do not support a finding that the defendant intended for her telephone call and the ringing it caused to be harassing. Accordingly, we conclude that the jury could not have reasonably found that the evidence was sufficient to prove that the defendant intended to harass or to annoy the victim when she made the telephone call.

The judgment is reversed and the case is remanded for a new trial on the charge of breach of the peace in the second degree and with direction to render judgment of not guilty of the charge of harassment in the second degree.

In this opinion BEACH, J., concurred.

BEACH, J., concurring. I agree with and join parts II and III of the majority opinion.[1] I write separately because I disagree with portions of the majority's analysis in part I, which discusses whether General Statutes § 53a-183 (a) (3), the harassment in the second degree statute, is unconstitutional as applied.

The majority holds—and I agree—that the evidence was insufficient to sustain a conviction of harassment in the second degree in violation of § 53a-183 (a) (3), as that statute has been construed by our courts and by the federal courts. Section 53a-183 (a) (3), proscribes

---

[1] As to the conviction of breach of the peace in the second degree under General Statutes § 53a-181 (a) (3), the majority holds that because it is language that was the subject of punishment in this case, a "true threat" instruction must be given in order to avoid the possible criminalization of speech protected by the first amendment. I agree with the majority's reasoning and holding on that score.

not speech but, rather, the conduct of making a telephone call.[2] It is the physical act of placing the call that constitutes the actus reus of the crime; it is not the threatening or otherwise abusive language that is criminalized. The case law clearly states that the narrow construction regarding the proscribed conduct eliminates unconstitutional overbreadth because speech, protected or otherwise, is not proscribed. "The asserted overbreadth of the Connecticut statute is circumscribed by the elements of the offense it proscribes. To run afoul of the statute, a telephone call must be made not merely to communicate, but 'with intent to harass, annoy or alarm' and 'in a manner likely to cause annoyance or alarm.' Whether speech actually occurs is irrelevant, since the statute proscribes conduct, whether or not a conversation actually ensues." *Gormley* v. *Director, Connecticut State Dept. of Probation*, 632 F.2d 938, 942 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980).

Because the evidence was insufficient, I would not undertake the analysis that the majority undertakes in part I as to whether the statute is unconstitutional as applied. A narrowing instruction is constitutionally required in situations in which words themselves are subject to punishment; as the majority notes in part II B, there is no such requirement when it is the intrusive telephone call itself that is the subject of prosecution.[3] In this instance, however, words are not punished, though they may provide circumstantial evidence of intent. There is not, then, an overbreadth problem that would allow, absent judicial narrowing, application to constitutionally protected activity. I do not believe,

---

[2] There, of course, has to be an accompanying intent to annoy, harass or alarm, and the call has to be made in a manner likely to cause annoyance or alarm.

[3] It nonetheless may be advisable for a trial court to define carefully the intent element and the manner in which the call must be made in order to be punishable.

then, that the statute is unconstitutional as applied; rather, it is simply inapplicable to punish speech at all.

Because the conviction was premised on the application of the statute to speech, I join the majority in reversing the conviction for harassment in the second degree and remanding the case with direction to render judgment of not guilty on that charge and reversing the conviction of breach of the peace in the second degree and remanding the case for a new trial on that charge.

I respectfully concur.

MCDONALD, J., concurring in part and dissenting in part. I agree with the majority opinion as to the breach of the peace count. I dissent from the majority's conclusion that there was insufficient evidence to support the conviction of the defendant, Diana L. Moulton, as to the harassment count.

The state concedes that the defendant was punished on the basis of the verbal content of her telephone call and not for the conduct involved in the making of the call, which ordinarily serves as a basis for prosecution under the harassment statute, General Statutes § 53a-183 (a) (3). Historically, the use of the telephone to make repeated, unwelcome, speechless calls during the early morning hours has ordinarily been a basis for prosecution under § 53a-183 (a) (3).

The majority holds that a spoken threatening call is not to be the subject of the harassment statute because the harassment statute is violated when the telephone rings and the ringing itself is likely to cause alarm. This is one type of call where the statute may be violated. By its terms, the statute can also be violated when a conversation or speech ensues and that call is made in a manner likely to cause alarm. Section 53a-183 (a) (3)

provides that one violates the statute when one with "intent to harass, annoy or alarm another person . . . makes a telephone call, *whether or not a conversation ensues,* in a manner likely to cause annoyance or alarm." (Emphasis added.) In his concurrence in *Gormley v. Director, Connecticut State Dept. of Probation,* 632 F.2d 938 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980), Judge Mansfield stated that he would uphold the application of the Connecticut harassment statute to speechless calls or to obscene or threatening calls, so that it will not penalize the exercise of first amendment free speech rights. Id., 943–45 (Mansfield, J., concurring).

In *Commonwealth* v. *Welch,* 444 Mass. 80, 101, 825 N.E.2d 1005 (2005), the Massachusetts Supreme Judicial Court stated that the court effectuated the intent of the legislature to apply the Massachusetts harassment statute solely to constitutionally unprotected speech "by protecting victims from harassment that may begin with words, but tragically end with violence," thereby establishing a continuum, along which law enforcement may confront behavior that potentially can escalate from threats to violence.

The majority opinion states that the defendant's speech may be considered only as circumstantial evidence of the caller's intent to alarm another person by making her telephone call. Our Supreme Court has held, however, that speech may be considered as to the alarming manner in which the call was made. *State* v. *Murphy,* 254 Conn. 561, 570, 757 A.2d 1125 (2000). As our Supreme Court stated, "in a prosecution seeking a conviction under § 53a-183, the fact finder may consider the language used in the communication in determining whether the state has proven the elements of the offense, namely, that the defendant intended to harass, annoy, or alarm and that he did so in a manner likely to cause annoyance or alarm." Id., 569.

While I agree that without the threatening speech there could be no rational basis to consider this single telephone call to the postal office during business hours as harassment causing alarm, our law provides that threatening speech can be considered as to the alarming manner in which the call was made. Despite the threatening speech, the majority opinion concludes that the defendant's conviction for harassment cannot stand. I disagree.

The majority opinion also concludes that there was insufficient evidence to find that the defendant intended to harass or to annoy the recipient of her telephone call. The record indicates, however, that the information charged the defendant with intending "to harass, annoy, or *alarm* another person" by making "a telephone call . . . in a manner likely to cause annoyance or alarm . . . ." (Emphasis added.)

As the majority recognizes, with respect to the breach of the peace count, the defendant's intent may be inferred from her conduct. There was evidence that the call was answered by a coworker of the defendant at the Norwich post office. There also was evidence that five days before, a disgruntled postal worker entered her California post office and shot and killed a number of coworkers. I would conclude that a jury could reasonably find that the defendant did intend to alarm her listener when she stated, in an angry and agitated tone during the telephone call, that the defendant could "do that, too," because of her similar mistreatment by postal supervisors.

The majority opinion also states that no judicial gloss defining the defendant's speech as a true threat is required because the harassment statute does not punish one for the contents of a telephone call but only for making a telephone call. In this case, the contents of the defendant's call could be viewed as a threat of

violent and lethal harm to postal office coworkers. As such, if it is a true threat, the speech is not protected by the first amendment, and it could be punished. *State* v. *Murphy*, supra, 254 Conn. 568 n.13, citing *Mozzochi* v. *Borden*, 959 F.2d 1174, 1178 (2d Cir. 1992). I would hold that the defendant's statement must be a true threat or it could not constitutionally be punished without violating the first amendment to the United States constitution. As the majority implicitly recognizes as to the breach of the peace count, citing *State* v. *DeLoreto*, 265 Conn. 145, 827 A.2d 671 (2003), and *State* v. *Cook*, 287 Conn. 237, 249, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008), the right to complain about harassment and bullying by postal supervisors is protected by the first amendment. Also, as the majority points out, with respect to the breach of the peace count, the defendant's statement in this case could be construed as not being a true threat.

Judge Mansfield, in his concurring opinion in *Gormley* v. *Director, Connecticut State Dept. of Probation*, supra, 632 F.2d 943, found that the Connecticut harassment statute was not facially overbroad, if the Connecticut Supreme Court were to apply the statute only to speechless calls or to obscene or threatening calls to avoid penalizing anyone exercising first amendment free speech rights. His concurrence observed that if it were not so construed, the statute would clearly be void for overbreadth. Id., 943–44. I conclude that the conviction based on the jury's verdict, after the charge to the jury that did not require the defendant's statement to be a true threat, would be an overbroad application of the harassment statute. I would, therefore, conclude that the court's failure to instruct the jury that the defendant's statement must be a true threat would require a new trial as to the harassment count.

Because I do not agree with the majority that the evidence would not support a conviction for harassment in the second degree, I would order a new trial on that count.

For the reasons given, I respectfully dissent from the order to enter a judgment of not guilty as to the harassment count.