STATE OF CONNECTICUT *v.* SCOTT LAFONTAINE
(AC 31284)

Bishop, Bear and Peters, Js.

Argued March 9—officially released May 10, 2011

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*,

state's attorney, and *James Dinnan*, senior assistant state's attorney, for the appellee (state).

BISHOP, J. The defendant, Scott LaFontaine, appeals from the judgment of conviction, rendered after a jury trial, of two counts of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3).[1] On appeal, the defendant claims that the statute is (1) unconstitutionally vague, both facially and as applied to his conduct, and (2) unconstitutional as applied to his conduct.[2] We agree that the statute was unconstitutionally applied to the defendant's conduct and, therefore, reverse the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The defendant's former wife was represented by Attorney Nikola Cunha in postdivorce matters involving visitation rights and custody of the defendant and his former wife's three minor children. On December 19, 2006, the defendant telephoned Cunha's law office and asked to speak to her. The receptionist, Cherokee Ghere, who is also Cunha's sister, informed the defendant that Cunha was out of the office but that he could leave a message. The defendant was upset by this

---

[1] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

[2] Although the defendant conflates these two claims in his brief, we note that they are distinct and require separate analyses. See *Grayned* v. *Rockford*, 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) ("clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct"). Additionally, the defendant claims that (1) the evidence was insufficient to prove intent, (2) the jury instructions were improper and (3) the conviction on the second count violated the constitutional protection against double jeopardy. Because we find that the defendant must be acquitted on the basis of his claim that the statute was unconstitutionally applied, we need not reach these claims.

response and became angry. He complained that Cunha had advised his former wife not to fill out paperwork in regard to his visitation rights and called Cunha "a corrupt cunt and a bitch." After listening to the defendant for a couple of minutes, Ghere became upset and fearful for her own and Cunha's safety. She yelled at the defendant, calling him "disgusting."

Witnessing Ghere becoming emotional and yelling, Louise Massaro, a case manager at the law firm, instructed her to put the call on hold. Massaro then picked up the telephone and asked the defendant to identify himself. He did so and informed her that he called to speak to Cunha because he was not going to let her get away with advising his former wife not to sign the visitation papers. When Massaro replied that Cunha was out of the office and that the defendant should take up his complaint with the court, he angrily yelled that Cunha was a "scumbag" and a "douche bag" and that if they thought they deserved respect, he would "show [them] what respect was." Massaro became nervous and hung up the telephone. Shortly thereafter, the women contacted the police. When Officer Lance Helms arrived at the office, he found the women to be visibly shaken and upset.

Following a jury trial, the defendant was convicted of two counts of harassment in the second degree in violation of § 53a-183 (a) (3). The court imposed a total effective sentence of thirty days incarceration. This appeal followed.

The defendant claims that § 53a-183 (a) (3) is vague both on its face and as applied to his conduct, in violation of his right to due process under the fourteenth amendment to the United States constitution, and that his conviction under the statute had the effect of criminalizing his speech, in violation of the first amendment. Conceding that these claims were not raised in the trial

court, the defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] For a claim that the statute is unconstitutional on its face, the record, to be adequate, must show that the defendant was convicted under the statute. For a claim that the statute is unconstitutional as applied to the defendant's conduct, the record must reflect the conduct that formed the basis of his conviction. See *State* v. *Indrisano*, 228 Conn. 795, 800, 640 A.2d 986 (1994). The record is sufficient in this regard and the issues are constitutional in magnitude. Because the claims are amenable to review, we analyze them under *Golding*'s third prong to determine whether the alleged constitutional violations clearly exist.

## I

The defendant first claims that § 53a-183 (a) (3) is unconstitutionally vague both (a) on its face and (b) as applied to his conduct in violation of his right to procedural due process. We do not agree.

We begin our analysis with the governing legal principles. A determination of statutory vagueness is a question of law over which we exercise de novo review. *State* v. *Winot*, 294 Conn. 753, 758–59, 988 A.2d 188 (2010). In undertaking such review, we make every presumption in favor of the statute's validity. Id., 759.

---

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 325, 977 A.2d 209 (2009).

Accordingly, "[t]o demonstrate that [a statute] is unconstitutionally vague as applied to [the defendant, he must] . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Internal quotation marks omitted.) Id. Finally, although a defendant ordinarily may challenge the vagueness of a statute only as applied to his particular conduct; *State* v. *Robert H.*, 273 Conn. 56, 67, 866 A.2d 1255 (2005); where an allegedly vague statute threatens to inhibit a constitutionally protected right such as freedom of speech, the statute's constitutionality may be tested for vagueness on its face. *State* v. *Ehlers*, 252 Conn. 579, 584–85, 750 A.2d 1079 (2000).

The United States Supreme Court has expounded upon these principles as follows. "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abut[s] upon sensitive

areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." (Internal quotation marks omitted.) *Grayned* v. *Rockford*, supra, 408 U.S. 108–109; see also *State* v. *Winot*, supra, 294 Conn. 759–60.

Here, the state concedes that its evidence of the harassing manner of the defendant's phone call "rested entirely" on the content of the speech he conveyed. Consequently, because the right to free speech under the first amendment is implicated, we review the defendant's claim that the statute is vague on its face as well as his claim that the statute is vague as applied to his conduct.

## A

The defendant claims that the statutory standard "in a manner likely to cause annoyance or alarm" is subjective and, consequently, that § 53a-183 (a) (3) is unconstitutionally vague on its face. He argues that because it does not provide an express objective standard, such as a reasonable person standard, parties lack reasonable notice of what conduct is prohibited, and, therefore, the statute likely will be enforced according to the inconsistent whims of law enforcement personnel, victims and juries.

"In a facial vagueness challenge, we . . . examine the challenged statute to see if it is impermissibly vague in all of its applications. A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. . . . Such a provision simply has no core. . . .

"Further, in evaluating the defendant's challenge to the constitutionality of the statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. We will indulge in every presumption in favor of the statute's constitutionality . . . . In so doing, we take into account any prior interpretations that this court, our Appellate Court and the Appellate Session of the Superior Court have placed on the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Indrisano*, supra, 228 Conn. 804–805.

We recognize that although the term "annoy" has been declared unconstitutionally vague; see id., 815–16; this vagueness has been remedied by judicial interpretation. The Supreme Court in *Indrisano* recognized that a court may add interpretive gloss to a challenged statute in order to render it constitutional. Id., 805; see also *State* v. *Robert H.*, supra, 273 Conn. 67 ("facially vague law may nonetheless comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards" [internal quotation marks omitted]). Accordingly, in regard to the statute at issue in *Indrisano*, the court remedied the vagueness in the language "annoys or interferes with another person" by holding that parties should rely primarily on the term "interferes" to interpret the statute, essentially reading the term "annoys" out of the statute. *State* v. *Indrisano*, supra, 228 Conn. 818. This court has adopted a similar interpretive gloss in regard to § 53a-183 (a) (3), holding the language "in a manner likely to cause annoyance or alarm" to be unambiguous as a whole by relying on the term "alarm" to remedy the vagueness of the term "annoyance." See *State* v. *Cummings*, 46 Conn. App. 661, 672–74, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997).

Just as in *Cummings*, in which we followed the Supreme Court's statutory construction in *Indrisano*

554

to read the term "annoyance" out of § 53a-183 (a) (3), we again follow *Indrisano*'s lead to resolve the defendant's present claim that the statute provides no ascertainable standard of conduct. In *Indrisano*, the court held that the language "with intent to cause inconvenience, annoyance or alarm" was not subject to arbitrary interpretation because "the legislature intended the language 'inconvenience, annoyance, or alarm' to be that perceived by a reasonable person operating under contemporary community standards." *State* v. *Indrisano*, supra, 228 Conn. 810. Accordingly, we deduce that the legislature intended the same language in § 53a-183 (a) (3), namely, "annoyance or alarm," to be that perceived to be as such by a reasonable person operating under contemporary community standards. We conclude, therefore, that the statute provides a sufficient core of meaning that it is not void for vagueness on its face.

B

We turn next to the defendant's claim that § 53a-183 (a) (3) is unconstitutionally vague as applied to his conduct. He makes two arguments in this regard: neither the statute nor any prior decision of this state provides fair warning of what constitutes harassment, and no prior decision of this state has held that the substance of his conversation could be made subject to punishment. We do not find either of these arguments to be availing.

"[T]he fundamental purpose of the void for vagueness doctrine is to ensure fair warning in order to avoid traps for the innocent . . . ." (Internal quotation marks omitted.) *State* v. *Winot*, supra, 294 Conn. 770. Here, the defendant has made no plausible argument that he acted in reliance on the belief that his conduct was lawful or that a person of ordinary intelligence would have no reason to know that he was engaging in harassing conduct. See id. To the contrary, our state's appellate decisions have held that the statute is not vague

as applied to angry telephone "complaints" to a place of business; see *State* v. *Bell*, 55 Conn. App. 475, 481–83, 739 A.2d 714, cert. denied, 252 Conn. 908, 743 A.2d 619 (1999); and that "the fact finder may consider the language used in the communication in determining whether the state has proven the elements of the offense, namely, that the defendant intended to harass, annoy or alarm, and that he did so in a manner likely to cause annoyance or alarm." *State* v. *Murphy*, 254 Conn. 561, 569, 757 A.2d 1125 (2000). Furthermore, insofar as the defendant is implying that a single, angry telephone call is insufficient to demonstrate harassment, we note that an insufficiency argument is not pertinent to a vagueness analysis.[4] See, e.g., *State* v. *Winot*, supra, 770.

Additionally, we note that in arguing that no prior decision has held that the substance of his conversation could be criminalized, the defendant is implying not that the statute gave inadequate notice but, rather, that the statute impermissibly criminalized his speech. In other words, this is a pure first amendment claim in the guise of a vagueness challenge, and, as such, it is not persuasive for purposes of vagueness analysis. See id. Because he has failed to demonstrate beyond a reasonable doubt that he lacked adequate notice that his conduct was prohibited by the statute, we conclude that the statute is not vague as applied to the operative facts in the present case.

## II

We turn, finally, to the defendant's claim that § 53a-183 (a) (3) is unconstitutional as applied to his conduct. In this regard, the defendant argues that because his

[4] We also note that although the defendant has raised an insufficiency claim in regard to the state's evidence of *intent* to harass, he has failed to raise a formal insufficiency claim in regard to the evidence of harassing *conduct*.

conviction rested primarily on the verbal content of the telephone call, the statute impermissibly was applied to proscribe his speech.[5] We agree.

As a preliminary matter, we note that the defendant's challenge, in this regard, is that the statute is unconstitutional as applied to him, not that it was facially overbroad. "Ordinarily, a particular litigant claims that a statute is unconstitutional as applied to him or her; if the litigant prevails, the courts carve away the unconstitutional aspects of the law by invalidating its improper applications on a case-by-case basis. . . . Overbreadth analysis, in contrast, does not reach the question whether the challenger's speech is constitutionally protected; instead it strikes down the statute entirely, because it might be applied to others not before the Court whose activities are constitutionally protected. When invalidated for overbreadth, a law is not narrowed, but rather becomes wholly unenforceable until a legislature rewrites it or a properly authorized court construes it more narrowly." (Internal quotation marks omitted.) *Leydon* v. *Greenwich*, 257 Conn. 318, 347 n.33, 777 A.2d 552 (2001).

Section 53a-183 (a) (3) has survived multiple first amendment challenges. See *State* v. *Bell*, supra, 55 Conn. App. 481 ("Although the defendant claims that the statute prevents him from speaking out on matters of public concern, it merely prohibits purposeful harassment by use of the telephone and does not involve first amendment concerns. The statute proscribes conduct,

---

[5] The state argues in opposition that the defendant's first amendment rights were not implicated because the telephone communication amounted to a constitutionally unprotected "true threat." It also suggests that the language may have amounted to constitutionally unprotected obscenity. These arguments are unpersuasive given that the state did not prosecute the case under either of the two criminal threatening statutes, General Statutes §§ 53a-61aa and 53a-62, or the criminal obscenity statutes, General Statutes § 53a-193 et seq.

not the content of the telephone calls."); *State* v. *Anony-mous (1978-4)*, 34 Conn. Sup. 689, 696, 389 A.2d 1270 (1978) ("it is the manner and means employed to communicate [the messages] which is the subject of the prohibition rather than their content"); see also *Gormley* v. *Director, Connecticut State Dept. of Probation*, 632 F.2d 938 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980) (fact finder permissibly could consider verbal content of telephone call as evidence of defendant's intent without infringing on first amendment rights).

Nevertheless, we subsequently ruled in *State* v. *Moulton*, 120 Conn. App. 330, 991 A.2d 728, cert. granted, 297 Conn. 916, 996 A.2d 278 (2010), that § 53a-183 (a) (3) was unconstitutional as applied to a postal employee who called her place of work and commented that she understood how a postal worker could become enraged and kill coworkers and that she could " 'do that, too.' " Id., 333. We held in *Moulton* that although the statute is not unconstitutionally overbroad on its face, "the state prosecuted the defendant on the basis of her speech, not her conduct in making the telephone call, and, therefore, her conviction was based on an impermissible construction of § 53a-183 (a) (3), which implicated her first amendment rights. Accordingly, we conclude that the statute was unconstitutional as applied to the defendant." Id., 337. We also stated that "[t]he jury should have been instructed to examine only whether the act of calling and causing the ringing of the telephone was harassing, and to look to the speech only for the intent in physically making the telephone call." Id., 339.

The present case is similar to *Moulton* not only factually but also because here, as in *Moulton*, the state prosecuted the defendant on the basis of his speech. Consequently, and in accord with *Moulton*, we conclude that § 53a-183 (a) (3) was unconstitutionally applied to

the defendant's speech in violation of the first amendment. Furthermore, given the state's concession that its evidence of the harassing manner of the defendant's telephone call "rested entirely" on the content of the speech he conveyed, we conclude, pursuant to the third prong of *Golding*, that the constitutional violation clearly deprived the defendant of a fair trial. Removing the defendant's speech from consideration in regard to the conduct element, the remaining evidence was insufficient to sustain a conviction under the statute.

The judgment is reversed and the case is remanded with direction to render a judgment of acquittal as to both counts.

In this opinion the other judges concurred.