******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* DORAINE REED
## (AC 37726)

DiPentima, C. J., and Alvord and Lavery, Js.

*Syllabus*

Convicted of the crime of harassment in the second degree, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which she made a threatening statement during a telephone call to a legal secretary at a law firm with which she had been engaged in a billing dispute. On appeal, the defendant claimed, inter alia, that the evidence was insufficient to support her conviction, contending that the verbal content of her telephone call could not form the substantive basis for her conviction because she lacked fair warning that *State* v. *Moulton* (310 Conn. 337), which was decided several months after she placed the telephone call, would broaden the scope of the second degree harassment statute (§ 53a-183 [a] [3]) to proscribe unprotected harassing speech. *Held*:

1. The evidence was sufficient to support the defendant's conviction: the case law prior to *Moulton* having limited the scope of § 53a-183 (a) (3) to conduct and not speech, *Moulton* did not apply to the present case, as the defendant lacked fair warning that she could be prosecuted for harassment in the second degree under § 53a-183 (a) (3) on the basis of the verbal content of her telephone call, and, contrary to the state's claim, even though the appeal in *Moulton* was pending when the defendant made the telephone call, she could not reasonably have foreseen the expansion of the scope of § 53a-183 (a) (3) in that case; nevertheless, the state presented sufficient evidence concerning the circumstances of the defendant's telephone call from which the jury reasonably could have found that the defendant, in referencing a notorious mass shooting incident during the call, intended to harass, annoy or alarm the employees of the firm so that they would take her and her billing complaint more seriously; moreover, pursuant to § 53a-183 (a) (3), the defendant's conduct in placing a single telephone call to the law firm was sufficient to constitute harassment in the second degree when, as in the present case, it was made with an intent to harass, annoy or alarm, as it was clear from the statutory language that the legislature sought to punish each telephone call made with the requisite intent, regardless of the number of times, if any, the victim was actually harassed, annoyed or alarmed.

2. The trial court improperly failed to provide the jury with a limiting instruction concerning its consideration of the verbal content of the defendant's telephone call, and, because the error was not harmless beyond a reasonable doubt, a new trial was warranted: the state's evidence of the defendant's intent and conduct, although sufficient, was not overwhelming and focused on the defendant's language, and the jury, which reasonably could have found that the mere placing of the call met the definition of harassment under § 53a-183 (a) (3), also could have relied on the defendant's speech as the basis for her conviction, especially given the state's closing argument, which focused on the verbal content of the defendant's call rather that the act of calling itself; moreover, because the jury did not receive an instruction on the law governing the defendant's speech as it pertained to the elements of harassment in the second degree, which the defendant requested and was entitled to, the jury could have been misled into finding the defendant guilty on the basis of her speech.

Argued May 24—officially released September 19, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of threatening in the second degree and harassment in the second degree, brought to the Superior Court in the judicial district of Fairfield, geographi-

cal area number two, and tried to the jury before *Kavanewsky, J.*; verdict and judgment of guilty of harassment in the second degree, from which the defendant appealed to this court. *Reversed; new trial.*

*Maria L. Vogel-Short*, certified legal intern, with whom was *James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Doraine Reed, appeals from the judgment of conviction, rendered after a jury trial, of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3).[1] On appeal, the defendant claims that (1) the evidence was insufficient to support her conviction and (2) the court improperly instructed the jury. We disagree with the defendant that the evidence was insufficient to support her conviction. We agree, however, that the court improperly instructed the jury and that this error was not harmless beyond a reasonable doubt. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

The jury reasonably could have found the following facts. The defendant was engaged in a billing dispute with the law firm that had been representing her, Rosenberg and Press (firm), and was dissatisfied with the way she had been treated. On March 6, 2013, the defendant called the firm. During the call, she complained that on the previous day, the firm's office manager, Osnat Rosenberg, had been rude to her and the firm had "disrespected" her. She then said that Adam Lanza[2] had also been disrespected, and unless the firm learned how to treat its clients, someone—even she, herself—might do something similar to the firm.

This frightened Brittany Mancini, the legal secretary who answered the call, and she immediately notified Osnat Rosenberg. Together, they decided to call the police, who arrived at the firm between thirty and forty minutes later to take statements. Mancini appeared nervous and scared as she was recounting the telephone conversation to the responding officer.

The defendant subsequently was arrested and charged with threatening in the second degree in violation of General Statutes § 53a-62 (a) (1) and harassment in the second degree in violation of § 53a-183 (a) (3). After a trial on August 6, 2014, the jury returned a verdict of not guilty with respect to the threatening charge and a verdict of guilty with respect to the harassment charge. On September 5, 2014, the court sentenced the defendant to sixty days of incarceration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence presented at trial was insufficient to support her conviction of harassment in the second degree.[3] Specifically, she argues that the state failed to adduce sufficient evidence to prove that (1) she intended to harass, annoy, or alarm someone at the firm, and (2) a single telephone call made to a commercial establishment during business hours was likely to cause annoyance or alarm within the meaning of § 53a-183 (a) (3). These arguments assume that the verbal content of the defendant's tele-

phone call could not form the substantive basis for her conviction because *State* v. *Moulton*, 310 Conn. 337, 78 A.3d 55 (2013), which broadened the scope of § 53a-183 (a) (3) to proscribe constitutionally unprotected harassing speech, does not govern the present case.[4] Although we agree with the defendant that *Moulton* is inapplicable, we disagree that the state presented insufficient evidence to support her conviction.

A

We first address the applicability of *Moulton* to the present case. The defendant argues that she had no fair warning that *Moulton* would expand the scope of § 53a-183 (a) (3) to proscribe harassing speech and, thus, she could not be convicted on the basis of the verbal content of her telephone call, even if such content was not protected under the state and federal constitutions. In response, the state first contends that it presented sufficient evidence to prove harassment in the second degree regardless of whether *Moulton* applies. Alternatively, the state contends that the certified question that was to be decided by our Supreme Court in *Moulton* should have forewarned the defendant of the impending change in the law and, therefore, her speech, which the state argues comprised a constitutionally unprotected true threat, could form the basis for a harassment conviction. We agree with the defendant that *Moulton* cannot control and that the verbal content of her telephone call cannot form the substantive basis for her harassment conviction.[5]

We begin by summarizing the relevant facts and procedural history of *Moulton*. The defendant in that case was a postal worker who was on leave from her job. Id., 343. She called the United States post office branch at which she worked and asked to speak to the postmaster, but spoke instead to the branch's supervisor of customer service, to whom she expressed frustration over various employment matters. Id., 343–44. She referenced a then-recent workplace shooting at a post office in California, in which a postal worker killed several people. Id., 343. The supervisor alerted the postmaster, postal inspectors, and the police. Id., 344. The *Moulton* defendant was arrested and eventually convicted of, inter alia, harassment in the second degree. Id. She appealed her conviction to this court. Id. Relying on a line of precedent limiting § 53a-183 (a) (3) to actions and not speech, we reversed her conviction and ordered that a judgment of acquittal be rendered. Id., 344–45. Our Supreme Court granted certification to appeal. Id., 341.

After examining the relevant jurisprudence and applying tools of statutory interpretation and construction, our Supreme Court concluded that the scope of § 53a-183 (a) (3) was not so narrow. See id., 362–63. The Supreme Court ruled that the legislature had intended to allow a jury to consider harassing and alarming

speech as well as conduct, except that "the court must instruct the jury on the difference between protected and unprotected speech whenever the state relies on the content of a communication as substantive evidence of a violation of § 53a-183 (a)." Id., 363. At the same time, however, our Supreme Court concluded that this was an unforeseeable expansion of the purview of § 53a-183 (a) (3), and, therefore, that the defendant's harassment conviction could not stand.[6] Id., 363–67.

In addressing the foreseeability of the change it announced, *Moulton* provides the appropriate standard for its applicability to the present case. "We have recognized that the judicial construction of a statute can operate like an ex post facto law and thus violate a criminal defendant's right to fair warning as to what conduct is prohibited. . . . [A] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction. . . . [Thus], when [a] court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law. . . . In determining whether a judicial construction of a statute effectively operates as a prohibited ex post facto law, [t]he question . . . is whether [the] decision was so unforeseeable that [the defendant] had no fair warning that it might come out the way it did. . . . Put differently, [t]he key test in determining whether the due process clause precludes the retrospective application of a judicial decision . . . is whether the decision was sufficiently foreseeable . . . that the defendant had fair warning that the interpretation given the relevant statute by the court would be applied in his case." (Citations omitted; internal quotation marks omitted.) Id., 365–66.

In the present case, as in *Moulton*, the defendant lacked fair warning that she could be prosecuted for harassment under § 53a-183 (a) (3) on the basis of the verbal content of her telephone call. Until the release of *Moulton* several months *after* the defendant placed her telephone call, our case law had been decisive in limiting the scope of the statute to conduct and not speech.[7] The defendant was entitled to rely on that construction of the statute; thus, the content of her speech cannot be the substantive basis for a conviction of harassment in the second degree. See id., 363–66; see also *State* v. *Book*, 155 Conn. App. 560, 569 n.7, 109 A.3d 1027 (noting that defendant was not "properly placed on notice of the change in the law" where his trial occurred before *Moulton*), cert. denied, 318 Conn. 901, 122 A.3d 632 (2015), cert. denied,      U.S.     , 136 S. Ct. 2029, 195 L. Ed. 2d 219 (2016).

The state, however, claims that the pendency of *Moulton* before our Supreme Court—and that court's ultimate use of ordinary tools of statutory construction— forewarned the defendant that § 53a-183 (a) (3) could

have been reinterpreted to reach the verbal content of a telephone call when such content was a true threat.[8] The state's argument is unavailing because *Moulton* itself answers this question: Our harassment jurisprudence had been unequivocal about the scope of the statutory proscription from its inception up through *Moulton*, never acknowledging or admitting ambiguity in the statute's inapplicability to speech. *State* v. *Moulton*, supra, 310 Conn. 366–67 and 367 n.25. We therefore do not agree that the defendant reasonably could have foreseen an outcome our Supreme Court ruled unforeseeable. See id., 367 n.25.

Because we determine that *Moulton* was an unforeseeable expansion of the scope of § 53a-183 (a) (3), the verbal content of the defendant's telephone call cannot be a substantive basis for her harassment conviction. With that in mind, we turn now to the defendant's arguments concerning her insufficiency of the evidence claim.

B

We begin our analysis by setting forth our well established standard of review. "A defendant who asserts an insufficiency of the evidence claim bears an arduous burden." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 146 Conn. App. 99, 110, 75 A.3d 798, cert. denied, 310 Conn. 948, 80 A.3d 906 (2013). "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with

the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Bush*, 325 Conn. 272, 285–86, 157 A.3d 586 (2017).

To obtain a conviction of harassment in the second degree, the state must prove beyond a reasonable doubt that the accused, "with intent to harass, annoy or alarm another person . . . makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." General Statutes § 53a-183 (a) (3). In this case, there is no dispute that the defendant placed a telephone call to the firm on March 6, 2013. The defendant contends, however, that she (1) lacked the specific intent to harass, annoy, or alarm, and (2) did not call the firm in a manner likely to cause annoyance or alarm.

The state presented the following evidence during the trial. The firm previously had represented the defendant in another matter. At some point, the firm sent a letter to the defendant, informing her of a purported billing discrepancy related to that matter. In response, on March 5, 2013, the day before the incident at issue, the defendant called the firm to resolve the discrepancy, which she believed was an accounting error. She spoke to the firm's office manager, Osnat Rosenberg, who was married to the firm's managing attorney, Max Rosenberg.

On March 6, 2013, the defendant called the firm again. Mancini answered, at which point the defendant identified herself. Mancini was familiar with the defendant's voice because the defendant often called and visited the firm's office. The defendant asked to speak directly to Max Rosenberg. Mancini informed the defendant that Max Rosenberg was busy conducting interviews and would be unable to return telephone calls until the next day. The defendant retorted that she hoped he was interviewing candidates to replace his wife. The defendant said she did not like Osnat Rosenberg and wanted her fired. She claimed that Osnat Rosenberg and the firm had mistreated and "disrespected" her. She said that "Adam Lanza, the shooter of the Sandy Hook shooting, was disrespected" and that "he shot the kids in

that school because he was disrespected." The defendant went on to say that if the firm did not learn how to respect its clients, somebody, even the defendant, herself, could come in and "show [the firm] a lesson like Adam Lanza did . . . ."

1

The defendant first argues that the state failed to adduce sufficient evidence to prove that she intended to harass, annoy, or alarm someone at the firm. Specifically, she contends that the state's evidence showed only that "her intent was to complain about her bill and about the behavior of the staff, she was calling to discuss a legitimate business issue, and her conduct was not harassment, but commercial communication. . . . There was no intent to do anything other than talk to her attorney." (Citations omitted.) This, she argues, did not constitute the specific intent required by the statute. Construing the evidence in the light most favorable to sustaining the conviction, we are not persuaded.

Harassment in the second degree is a specific intent crime. *State* v. *Kantorowski*, 144 Conn. App. 477, 488, 72 A.3d 1228, cert. denied, 310 Conn. 924, 77 A.3d 141 (2013). "There is no conceptual distinction among acts intended 'to harass,' 'to annoy,' and 'to alarm' . . . ." *State* v. *Marsala*, 43 Conn. App. 527, 540, 684 A.2d 1199 (1996), cert. denied, 239 Conn. 957, 688 A.2d 329 (1997). Our Supreme Court has summarized the nearly identical intent language of our disorderly conduct statute[9] to mean that "the predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm. In order to sustain a conviction for disorderly conduct, the state must begin by demonstrating that the defendant had such a state of mind." *State* v. *Indrisano*, 228 Conn. 795, 810–11, 640 A.2d 986 (1994).

"A person acts intentionally with respect to a result . . . when his conscious objective is to cause such result . . . . General Statutes § 53a-3 (11) . . . . [T]he question of intent is purely a question of fact. . . . [T]he state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually [proven] by circumstantial evidence . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 715, 138 A.3d 868 (2016). In the case of harassment, "we must infer [intent] from the reaction of the victim and the circumstances of each call." *State* v. *Marsala*, supra, 43 Conn. App. 537.

Even before *Moulton*, "[e]vidence of the language used in an alleged violation of the harassment statute [was] relevant to show the intent of the accused in making the telephone call as well as the likelihood of its causing annoyance or alarm." *State* v. *Lewtan*, 5 Conn. App. 79, 83, 497 A.2d 60 (1985); accord *State* v. *Buhl*, supra, 321 Conn. 719–20 (applying *State* v. *Lewtan*, supra, 83, in consideration of violation of § 53a-183 [a] [2]); *State* v. *Murphy*, 254 Conn. 561, 569, 757 A.2d 1125 (2000) ("fact finder may consider the language used in the communication in determining whether the state has proven the elements of the offense, namely, that the defendant intended to harass, annoy or alarm, and that he did so in a manner likely to cause annoyance or alarm"), overruled in part on other grounds by *State* v. *Moulton*, 310 Conn. 337, 362, 78 A.3d 55 (2013).

In the present case, the jury reasonably could have found that the circumstances of the defendant's telephone call evinced a predominant conscious objective to harass, annoy, or alarm. Prior to the call at issue, the defendant was notorious among the firm's employees because of her constant calls and visits. Those other calls, though frequent, apparently were made in a good faith effort to resolve a billing dispute and passed without incident.

The March 6, 2013 call, however, was patently different. This time, the defendant sought out Max Rosenberg directly. When the defendant was informed of his unavailability, she made disparaging remarks about Osnat Rosenberg and the firm, and then evoked the Sandy Hook shootings.[10] The jury reasonably could have concluded that, angry and frustrated though the defendant may have been, this was not a sudden outburst, but rather an implementation of a premeditated retort intended to frighten the employees at the firm into cooperation concerning her bill. As a result, the jurors reasonably could have found, on the basis of the evidence presented at trial, the reasonable inferences drawn therefrom, and their own common sense and life experiences, that the defendant's intent when placing the March 6, 2013 telephone call was not simply to resolve a billing discrepancy but, rather, to harass, annoy, or alarm the members of the firm so that they would finally take her and her billing complaint more seriously.

We recognize that a jury reasonably could conclude from the evidence presented at trial that when the defendant placed her call, she intended only to resolve the billing discrepancy, not to harass, annoy, or alarm the members of the firm. When reviewing a sufficiency claim, however, "we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that

supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Silva*, 285 Conn. 447, 454, 939 A.2d 581 (2008). Mindful as we are that in determining the sufficiency of the evidence, we construe the evidence in the light most favorable to sustaining the verdict and consider its cumulative effect, we determine that there was sufficient evidence adduced at trial to support the defendant's conviction of harassment in the second degree.

2

The defendant next argues that the state failed to adduce sufficient evidence to prove that a single telephone call made to a commercial establishment during business hours was likely to cause annoyance or alarm within the meaning of § 53a-183 (a) (3). Specifically, the defendant contends that the state's evidence demonstrated only that she placed "a single telephone call during business hours to the office of an attorney retained by the defendant," and that this "could not constitute harassment in the second degree . . . ." We are not persuaded.

Again, a person is guilty of harassment in the second degree when, with the requisite intent, that person "makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." General Statutes § 53a-183 (a) (3). Annoyance is defined as "vexation; a deep effect of provoking or disturbing . . . ." *State* v. *Indrisano*, supra, 228 Conn. 810. " 'Alarm' is defined as . . . 'fear: fill[ed] with anxiety as to threatening danger or harm . . . .' Webster's Third New International Dictionary [1993]." *State* v. *Cummings*, 46 Conn. App. 661, 673, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997). "[T]he legislature intended . . . 'annoyance or alarm,' to be that perceived to be as such by a reasonable person operating under contemporary community standards." *State* v. *LaFontaine*, 128 Conn. App. 546, 554, 16 A.3d 1281 (2011).

Typically, telephone harassment involves multiple telephone calls or calls placed at inconvenient locations or hours. See, e.g., *State* v. *Therrien*, 117 Conn. App. 256, 259–60, 978 A.2d 556 (defendant placed threatening calls to complainant's personal cellular telephone during work hours), cert. denied, 294 Conn. 913, 983 A.2d 275 (2009); *State* v. *Lemay*, 105 Conn. App. 486, 488–89, 938 A.2d 611 (defendant repeatedly, anonymously called complainant and made banging noises), cert. denied, 286 Conn. 915, 945 A.2d 978 (2008); *State* v. *Bell*, 55 Conn. App. 475, 477, 739 A.2d 714 (defendant placed forty-five phone calls), cert. denied, 252 Conn. 908, 743 A.2d 619 (1999), overruled in part on other grounds by *State* v. *Moulton*, 310 Conn. 337, 362, 78 A.3d 55 (2013); *State* v. *Marsala*, supra, 43 Conn. App. 529 (defendant called complainant twenty-five times in early morning hours); *State* v. *Marsala*, 1 Conn. App.

647, 648–49, 474 A.2d 488 (1984) (defendant made threatening calls to complainant at her home, at night, and broke her window); *Gormley* v. *Director, Connecticut State Dept. of Probation*, 632 F.2d 938, 940–41 (2d Cir.) (defendant called complainant's workplace to harass her), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980).

Those examples notwithstanding, the plain language of the statute specifies that even one telephone call made in a manner likely to cause annoyance or alarm is enough to constitute the actus reus of harassment. "[T]he phrase 'a telephone call,' coupled with the phrase, 'likely to cause annoyance,' shows that the legislature intended to punish each telephone call made with the requisite intent to harass, annoy or alarm regardless of the number of times, if any, the victim was actually harassed, annoyed or alarmed. . . . [T]he phrase 'likely to cause annoyance or alarm' shows that the effect on the listener is not relevant. Instead, the statute is concerned with the conduct of the individual making the telephone call. Additionally, the phrase 'a telephone call' shows the legislature's intent to punish for a single telephone call. Therefore, an individual violates § 53a-183 (a) (3) each time the individual makes a telephone call with the intent to harass, alarm and annoy the victim in a manner likely to cause annoyance or alarm regardless of the number of times the victim actually became alarmed or annoyed, if any, and regardless of how close in time the calls were made or whether the victim was actually harassed, annoyed or alarmed." *State* v. *Marsala*, 93 Conn. App. 582, 589, 889 A.2d 943 (analyzing statute in context of defendant's double jeopardy claim), cert. denied, 278 Conn. 902, 896 A.2d 105 (2006).

Nevertheless, a jury may hear the effect on the listener to the extent that it evinces the likelihood that the call caused annoyance or alarm. See *State* v. *Lewtan*, supra, 5 Conn. App. 83–84 ("Evidence of the language used in an alleged violation of the harassment statute is relevant to show the intent of the accused in making the telephone call as well as the likelihood of its causing annoyance or alarm. . . . The witness was testifying as to his observation of the child relative to telephone calls made to the family home by the defendant. These observations were relevant to show that the calls were, in the words of the statute, likely to cause annoyance or alarm." [Citations omitted; internal quotation marks omitted.]); accord *State* v. *Murphy*, supra, 254 Conn. 569 ("fact finder may consider the language used in the communication in determining . . . that the defendant intended to harass, annoy or alarm, and that he did so in a manner likely to cause annoyance or alarm"); see also *State* v. *Adgers*, 101 Conn. App. 123, 127, 921 A.2d 122 ("a jury considering the response of 'a person of common intelligence' may receive evidence of the particular circumstances sur-

rounding a particular communication"), cert. denied, 283 Conn. 903, 927 A.2d 915 (2007).

In the present case, the defendant's telephone call was the latest in a series of frequent calls and visits. The defendant called again and referenced the Sandy Hook shootings and their perpetrator, implying that she or someone like her could "show [the firm] a lesson . . . ." She caused Mancini to be "nervous" and "in fear for [her] physical well-being." Construing this evidence in the light most favorable to sustaining the conviction, we conclude that the jury reasonably could have found that the defendant placed a telephone call in a manner likely to cause annoyance or alarm.

We therefore determine that upon the facts construed in favor of sustaining the conviction, and upon the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence established that the defendant was guilty beyond a reasonable doubt of harassment in the second degree.

II

The defendant next claims that the court improperly instructed the jury, and that this error was not harmless. Specifically, she contends that the court erred in failing to provide her requested instruction limiting the jury's consideration of the verbal content of her telephone call.[11] The state concedes that the court erred, but argues that the error was harmless beyond a reasonable doubt.[12] We agree with the defendant that the trial court erred in failing to provide a limiting instruction and that such error was not harmless beyond a reasonable doubt.

"We begin with the well established standard of review governing the defendant's challenge[s] to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties]

that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Baltas*, 311 Conn. 786, 808–809, 91 A.3d 384 (2014).

The court charged the jury with respect to harassment in the second degree as follows: "So, the defendant is charged in count two with harassment in the second degree. The statute defining this offense reads in pertinent part as follows:

"A person is guilty of harassment in the second degree when, with intent to harass, annoy, or alarm another person, she makes a telephone call, whether or not conversation ensues, in a manner likely to cause annoyance or alarm. For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt.

"The first element is that the defendant intended to harass, annoy, or alarm another person. Again, a person acts intentionally with respect to a result when her conscious objective is to cause such a result. You will recall my earlier instructions concerning how you may go about determining what a person's intention was,[13] and you should apply those instructions here.

"Harass means to trouble, worry, or torment. Annoy means to [irritate], vex, or bother, as by a repeated action. Alarm means to make suddenly afraid, anxious, or violent.

"The second element is that the defendant made a telephone call in the manner that was likely to cause annoyance or alarm. It does not matter whether the defendant had a conversation with another person; it only matters that she made the telephone call in the manner that was likely to cause annoyance or alarm.

"In summary, the state must prove beyond a reasonable doubt that the defendant intended to harass, annoy, or alarm another person and she made a telephone call to another person in a manner that was likely to cause annoyance or alarm." (Footnote omitted.)

The defendant contends that the court erred in failing to provide her requested instruction limiting the jury's consideration of the verbal content of her telephone call. On the day before trial, the defendant submitted a request to charge, which contained the following language: "You are to examine only whether the act of the calling and causing the ringing of the telephone was harassing, and to look to the speech only for the intent in physically making the telephone call. LEGAL AUTHORITY: Connecticut Selected Jury Instructions Criminal, § 6.7-7; *State* v. *Moulton*, 120 Conn. [App. 330, 339, 991 A.2d 728] (2010) [aff'd in part, 310 Conn. 337, 78 A.3d 55 (2013)]; see also *State* v. *LaFontaine*, 128 Conn. App. 546, 555–58 [16 A.3d 1281] (2011)."[14] The state concedes, and we agree, that the court should have included the requested language.[15] We turn therefore to our harmlessness analysis.

We conclude that this error was not harmless beyond a reasonable doubt. The state's evidence of the defendant's intent and conduct, though sufficient, was not overwhelming and focused in not insignificant part upon the defendant's actual language. Although the jury reasonably could have found that the mere placing of the call met the definition of harassment under § 53a-183 (a) (3), it also could have relied upon her speech as the basis for its verdict of guilty. This is all the more likely in light of the state's closing argument, which focused primarily on the verbal content of the defendant's call rather than on the act of calling itself: "Basically, this is a case about a phrase," and, "we're here because of nine words . . . ."[16] Properly instructed, it is reasonably possible that a jury would have found that the defendant did not commit harassment by calling the law firm.

The defendant requested and was entitled to a proper instruction on the law governing her speech as it pertained to the elements of harassment in the second degree. The jury did not receive such an instruction, and therefore could have been misled into finding the defendant guilty on the basis of her speech. Accordingly, we cannot conclude that the court's failure to instruct the jury in such a manner was harmless error.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

[2] The parties stipulated to the historical fact that, on December 14, 2012, Adam Lanza fatally shot twenty children and six adults at Sandy Hook Elementary School in Newtown.

[3] We consider these claims first because, if successful, the defendant would be entitled to a judgment of acquittal. "[A] reviewing court must address a defendant's insufficiency of the evidence claim, if the claim is properly briefed and the record is adequate for the court's review, because resolution of the claim may be dispositive of the case and a retrial may be a 'wasted endeavor.' " *State* v. *Padua*, 273 Conn. 138, 179, 869 A.2d 192 (2005). In the present case, the claim is properly briefed and the record is adequate for review.

[4] *Moulton* was argued in our Supreme Court on September 18, 2012, and officially released on October 29, 2013. See *State* v. *Moulton*, supra, 310 Conn. 339. The conduct at issue in the present case occurred on March 6, 2013.

[5] Accordingly, we need not reach the implicit question of whether the verbal content of the defendant's telephone call comprised a constitutionally unprotected true threat. If *Moulton* had applied, the verbal content of the defendant's telephone call could be the substantive basis for her conviction only to the extent that it is not constitutionally protected.

[6] As a result, our Supreme Court affirmed this court's reversal of the trial court's judgment, in which this court ordered a new trial on the charge of breach of the peace in the second degree. Our Supreme Court then held that the form of this court's judgment was improper insofar as we had directed the trial court to render judgment of not guilty on the charge of harassment in the second degree, and remanded the case to this court with direction to remand the case to the trial court with direction to render judgment dismissing the charge of harassment in the second degree. *State* v. *Moulton*, supra, 310 Conn. 370.

[7] See *State* v. *LaFontaine*, 128 Conn. App. 546, 558, 16 A.3d 1281 (2011) (concluding there was insufficient evidence to support conviction of harassment in second degree where state conceded its evidence " 'rested entirely' " on content of speech); *State* v. *Bell*, 55 Conn. App. 475, 481, 739 A.2d 714 (rejecting contention that statute had chilling effect on speech because § 53a-183 [a] [3] "merely prohibits purposeful harassment by use of the telephone and does not involve first amendment concerns"), cert. denied, 252 Conn. 908, 743 A.2d 619 (1999), overruled in part by *State* v. *Moulton*, 310 Conn. 337, 362, 78 A.3d 55 (2013); see also *State* v. *Anonymous (1978-4)*, 34 Conn. Supp. 689, 695–96, 389 A.2d 1270 (declining to provide judicial gloss of "fighting words" on ground that § 53a-183 [a] [3] does not implicate speech), cert. denied sub nom. *State* v. *Gormley*, 174 Conn. 803, 382 A.2d 1332 (1978), overruled in part by *State* v. *Moulton*, 310 Conn. 337, 351–63, 78 A.3d 55 (2013); *Gormley* v. *Director, Connecticut State Dept. of Probation*, 632 F.2d 938, 941–42 (2d Cir.) ("Clearly the Connecticut statute regulates conduct, not mere speech. What is proscribed is the making of a telephone call, with the requisite intent and in the specified manner." [Emphasis omitted.]), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980)); accord *State* v. *Murphy*, 254 Conn. 561, 568–69, 757 A.2d 1125 (2000) (construing § 53a-183 [a] [2], which uses nearly identical terms, not to regulate letters' content but rather harassing mailing thereof), overruled in part on other grounds by *State* v. *Moulton*, 310 Conn. 337, 362, 78 A.3d 55 (2013).

[8] See *State* v. *Courchesne*, 296 Conn. 622, 726, 998 A.2d 1 (2010) ("because this court routinely relies on settled principles of statutory interpretation to ascertain the meaning of an ambiguous statute, our reasoned application of those ordinary tools of construction no doubt will result in an interpretation of the statute at issue that is both foreseeable and defensible for purposes of due process"); *State* v. *Miranda*, 260 Conn. 93, 109–10, 794 A.2d 506 ("[T]ools of statutory construction demonstrated that by reference to the law as it then existed, it was neither unexpected nor indefensible to impose a common-law duty on the defendant to protect the victim under the facts of this case and to impose criminal liability for his failure to so act. We therefore agree with the state that this court's recognition of a common-law duty and the application of [General Statutes] § 53a-59 [a] [3] were reasonably foreseeable and did not deprive the defendant of due process in accordance with the standard articulated in *Bouie* [v. *Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964)]."), cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002).

[9] "A person is guilty of disorderly conduct when, *with intent to cause inconvenience, annoyance or alarm*, or recklessly creating a risk thereof, such person . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ." (Emphasis added.) General Statutes § 53a-182 (a).

[10] At trial, the parties entered into a stipulation that the Sandy Hook shooting occurred on December 14, 2012. Mancini also testified that "it was only months after the shooting, the massacre, if you will, so it was very prominent in everybody's minds . . . ."

[11] The defendant also claims that the court erred in failing to provide a necessary judicial gloss of the terms of § 53a-183 (a) (3). Because we conclude that the trial court erred in failing to give a limiting instruction and that this error was not harmless, we need not reach this final claim.

[12] In its brief, the state acknowledges that if pre-*Moulton* law applies, then the trial court erred in failing to grant the defendant's request to charge. The state also concedes that there would have been error even if *Moulton* had applied because the court failed to instruct the jury as to the difference between protected speech and unprotected true threats in the context of the harassment charge. In part I A of this opinion, we determined that *Moulton* announced an unforeseeable change in our law and therefore cannot apply in the present case. Accordingly, we need not reach the question of whether the court should have charged the jury as to constitutional free speech protections in the context of the harassment charge.

[13] The court had instructed the jury previously that "[a] person acts 'intentionally' with respect to a result when her conscious objective is to cause such result. . . .

"[W]hat a person's intention was is usually a matter to be determined by inference. No person is able to testify that they looked into another's mind and saw therein a certain knowledge or certain purpose or intention to do harm to another. Because direct evidence of the defendant's state of mind is rarely available, intent is generally proved by circumstantial evidence. The only way a jury can ordinarily determine what a person's intention was

at any given time is by determining what the person's conduct was, and what the circumstances were surrounding that conduct, and from that, infer what her intention was.

"To draw such an inference is the proper function of a jury, provided, of course, that the inference drawn complies with the standards for inferences as explained in connection with my instruction on circumstantial evidence. The inference is not a necessary one. You are not required to infer a particular intent from the defendant's conduct or statements, but it's an inference that you may draw if you find it is reasonable and logical. I again remind you that the burden of proving intent beyond a reasonable doubt is on the state."

[14] The defendants in both *Moulton* and *LaFontaine* challenged the application of § 53a-183 (a) (3) to their conduct as unconstitutional. See *State* v. *LaFontaine*, supra, 128 Conn. App. 555; *State* v. *Moulton*, supra, 120 Conn. App. 334–35. These specific, as-applied, constitutional challenges are less expansive in scope than the evidentiary challenge in *Lewtan*, in which the defendant claimed that speech was not relevant. Compare *State* v. *Moulton*, supra, 120 Conn. App. 339 ("[*t*]*he jury should have been instructed* to examine *only* whether the act of calling and causing the ringing of the telephone was harassing, and to look to the speech *only* for the intent in physically making the telephone call" [emphasis added]), and *State* v. *LaFontaine*, supra, 128 Conn. App. 555–58 (same), with *State* v. *Lewtan*, supra, 5 Conn. App. 83 ("[e]vidence of the language used in an alleged violation of the harassment statute is *relevant* to show the intent of the accused in making the telephone call *as well as the likelihood of its causing annoyance or alarm*" [emphasis added]). Elsewhere, both *Moulton* and *LaFontaine* acknowledge the broader general relevance of speech evidence in harassment cases. See *State* v. *LaFontaine*, supra, 128 Conn. App. 555; *State* v. *Moulton*, supra, 120 Conn. App. 352.

The defendant's claim in the present case is one of constitutional error in failing to provide the requested limiting instruction with respect to the jury's consideration of the element of specific intent. This is more analogous to the claims in *Moulton* and *LaFontaine* than the evidentiary claim in *Lewtan*. We are satisfied, therefore, that the defendant's request to charge complied with Practice Book § 42-18 and accurately stated the law.

[15] On the day of trial, the state also submitted a request to charge. Its request does not contain the language the defendant requested.

[16] We note that, at trial, the state was attempting to prove not only harassment in the second degree, but also threatening in the second degree. As a result, its case necessarily incorporated the defendant's speech even though it did not depend entirely thereon. See *State* v. *Moulton*, supra, 310 Conn. 341 ("the state conceded that its case was predicated entirely on the defendant's speech"); *State* v. *LaFontaine*, supra, 128 Conn. App. 552 ("the state concedes that its evidence of the harassing manner of the defendant's phone call 'rested entirely' on the content of the speech"). With respect to the threatening charge, the court properly instructed the jury that only physical threats and true threats are punishable ipso facto.